```
            UNITED STATES DISTRICT COURT
           FOR THE DISTRICT OF RHODE ISLAND
```

Jimmy Smith

                                        Case No. 21-cv-133-PJB-AKJ

    v.                              Opinion No. 2023 DNH 017

Roger Williams University Law School

**ORDER**

     Plaintiff Jimmy Smith, a law school graduate appearing pro se, has sued his alma mater, Roger Williams University Law School (RWULS).  Mr. Smith claims that RWULS discriminated against him because of his race and breached a contractual promise to provide him with a clinical placement.  Invoking Fed. R. Civ. P. 12(b)(6), RWULS moves to dismiss (Doc. No. 57), arguing that Mr. Smith's complaint fails to state a claim for relief.  RWULS also argues that Mr. Smith's complaint violates Fed. R. Civ. P. 8(a)(2) (requiring a "short plain statement of the claim") and 10(b) (requiring separately numbered paragraphs).  Mr. Smith has timely objected (Doc. No. 78), to which RWULS has replied (Doc. No. 79).  The motion is granted in part and denied in part.  Accepting all of Mr. Smith's well-pleaded facts as true, the court finds that Mr. Smith has failed to state claim for racial discrimination, but has adequately set forth facts to support a claim for breach of contract.

## Factual Background[1]

Mr. Smith, an African American, began his studies at RWULS in the Fall of 2016. He alleges that, due to his race, RWULS took adverse actions against him. Specifically, Mr. Smith avers that he has been outspoken on racial issues since 2016 and that "when [he] talk[ed] about issues of race and [his] white classmates complained, he was called by the school's Title IX coordinator to talk about the issue." Mr. Smith has offered no details of the resulting discussions, other than noting that they did not result in any formal disciplinary proceeding against him. He alleges that such meetings were not held when he complained about white classmates.

Mr. Smith further asserts that RWULS dismissed a disciplinary complaint he lodged against a white female student as de minimis but did not dismiss disciplinary proceedings against him brought by the same student. His complaint contains no information as to results of those proceedings. He also claims that the school commenced disciplinary proceedings

---

[1] Unless indicated otherwise, the facts are taken from Mr. Smith's complaint (Doc. No. 1) and amended complaint (Doc. No. 5), the latter of which the Magistrate Judge construed as a "complaint addendum" during her preliminary review of this case. See February 22, 2022, Report and Recommendation (Doc. No. 45) at 1, adopted, April 15, 2022 (Doc. No. 62).

against him only after the sole African American on the disciplinary board contracted Covid-19.

Mr. Smith claims that he was denied the opportunity to participate in a RWULS clinical program because of a "run-"in" with the law, while white students with legal issues have not been denied those opportunities and white faculty members have not been disciplined for their legal troubles.  He alleges that the school did so despite "guaranteeing" students a clinical placement.  He also claims that the school has retaliated against him for complaining about racial issues by "preventing him from accessing the same resources" as white students.

### Procedural History

Mr. Smith filed his original complaint (Doc. No. 1) on March 19, 2021, and his complaint addendum (Doc. No. 5) a few weeks thereafter.  On preliminary review, the Magistrate Judge, construing the pro se complaint liberally, allowed claims for racial discrimination (Claims and 1 and 2) and breach of contract (Claim 3) to proceed.  February 16, 2022, Report and Recommendation (Doc. No. 45) at 4-5.  The court construed claims 1 and 2 as arising under 42 U.S.C. § 1981 and claim 3 as arising under common law contract principles.  The court allowed those claims to proceed without prejudice to RWULS's "ability to move to dismiss on any appropriate basis."  February 16, 2022 Order (Doc. No. 46) at 1.

**Standard of Review**

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a plaintiff must make factual allegations sufficient to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id.  A claim is facially plausible if it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In testing a complaint's sufficiency, the court employs a two-step approach.  See Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011).  First, the complaint is screened for statements that "merely offer legal conclusions couched as fact or threadbare recitals of the elements of a cause of action." Id. (cleaned up).  A claim consisting of little more than "allegations that merely parrot the elements of the cause of action" may be dismissed. Id.  Second, after crediting as true all non-conclusory factual allegations and the reasonable inferences drawn from those allegations, the court determines if the claim is plausible. Id. The plausibility requirement "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of illegal conduct. Twombly, 550

4

U.S. at 556.  The "make-or-break standard" is that those allegations and inferences, "taken as true, must state a plausible, not a merely conceivable, case for relief." Sepúlveda-Villarini v. Dep't of Educ. of P.R., 628 F.3d 25, 29 (1st Cir. 2010).

## Analysis

A.  Fed. R. Civ. P. 8(a) and 10(b)

Before analyzing Mr. Smith's claims under Rule 12(b)(6), the court first addresses the defendant's argument that the complaint should be dismissed pursuant to Fed. R. Civ. P. 8(a) and 10(b).

Rule 8(a)(1) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief[.]"  The pleading must "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests[.]'" Twombly, 550 U.S. at 555 (alteration in original) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). "At a bare minimum, even in this age of notice pleading, a defendant must be afforded both adequate notice of any claims asserted against him and a meaningful opportunity to mount a defense." Diaz- Rivera v. Rivera-Rodriguez, 377 F.3d 119, 123 (1st Cir. 2004) (quoting Rodriguez v. Doral Mortg. Corp., 57 F.3d 1168, 1172 (1st Cir. 1995)).

5

Additionally, "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). "If doing so would promote clarity, each claim founded on a separate transaction or occurrence – and each defense other than a denial – must be stated in a separate count or defense."

As the Magistrate Judge noted, Mr. Smith's complaint and addendum contain "often-scattershot allegations." Report and Recommendation (Doc. No 45) at 5. Nevertheless, the court is persuaded that the Magistrate Judge's delineation of Mr. Smith's claims provides sufficient clarity to allow the defendant "adequate notice of any claims asserted against him and a meaningful opportunity to mount a defense." Diaz-Rivera, 377 F.3d at 123. Accordingly, dismissal under Fed. R. Civ. P. 8 or 10 is unwarranted.[2]

---

[2]The court also rejects Mr. Smith's argument that dismissal under Rule 12(b)(6) for failure to state a claim is precluded by the Magistrate Judge allowing those claims to proceed. In the first instance, the Magistrate Judge's service order (Doc. No. 46) was issued "without prejudice to the defendant's ability to move to dismiss the claims on any appropriate basis." Id. at 1. In addition, the defendant has supported its motion with documents -- unavailable to the Magistrate Judge -- that the court may consider on a motion to dismiss (such as the RWULS Handbook) because they were referred to in Mr. Smith's complaint. Finally, the court is disinclined to deprive the defendant of its right to seek relief under the Federal Rules of Civil Procedure by essentially considering its motion to be "denied" before it was ever filed, or the defendant had an opportunity to present legal argument. See Aleman v. Dart, No. 09-cv-6049, 2010 WL 4876720, at *3-4 (N.D. Ill. Nov. 23, 2010)

6

B.  Racial Discrimination Claims

Liberally construing Mr. Smith's complaint and addendum, the court allowed the following discrimination claims to proceed under 42 U.S.C. § 1981:

> Claim 1(a) -- RWULS and its professors summarily dismissed Mr. Smith's complaints about racial insensitivity and discrimination at RWULS;
>
> Claim 1(b) -- RWULS and its professors handled internal complaints white students lodged against Mr. Smith differently than complaints he lodged against white students;
>
> Claim 2(a) -- RWULS retaliated against Mr. Smith for filing this lawsuit in violation of his First Amendment rights; and
>
> Claim 2(d) -- RWULS treated Mr. Smith differently than other students and faculty because of his race.

Report and Recommendation (Doc. No. 45) at 4-5.

Section 1981 provides that "[a]ll persons ... shall have the same right in every State and Territory to make and enforce contracts ... as is enjoyed by white citizens." 42 U.S.C. § 1981(a). To state a cognizable racial discrimination claim, a plaintiff must establish that "(1) [he] is a member of a racial minority; (2) the defendant discriminated against [him] on the basis of [his] race; and (3) the discrimination implicated one or more of the activities listed in the statute, including the

---

(rejecting application of "law of the case" doctrine to defendant's motion to dismiss pro se complaint that was allowed to proceed after preliminary review).

7

right to make and enforce contracts." Hammond v. Kmart Corp., 733 F.3d 360, 362 (1st Cir. 2013). "To succeed on his race-based claims, [a plaintiff] must show, among other things, that [the defendant] acted with discriminatory intent." Doe v. Brown Univ., 43 F.4th 195, 208 (1st Cir. 2022). In sum, a § 1981 plaintiff must "initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right." Comcast Corp. v. Nat'l Ass'n of African American-Owned Media, 140 S. Ct. 1009, 1019, (2020).

Stripped of conclusory factual allegations, the court finds that Mr. Smith has failed to plead facts sufficient to support a plausible claim that RWULS discriminated against him because of his race.

Each of Mr. Smith's discrimination claims alleges that he was treated differently than white students. Although "[i]ntentional racial discrimination can be inferred from disparate treatment of races[,]" Doe v. Trs. Of Dartmouth Col., Civ. No. 21-cv-85-JD, 2021 WL 2857518, at * 8 (D.N.H. July 8, 2021), Mr. Smith's complaint and addendum contain only conclusory allegations of discrimination meted out to him. As previously described, his original complaint alleges, without any further explanation, that RWULS "gives harsher punishments to persons of color who are accused by white students." Compl. (Doc. No. 1-1) ¶ 11. He further alleges that he made a

8

complaint against two white students that RWULS denied as de minimis, but a white student's complaint against him was "deemed more than de minimis." Compl. Add. (Doc. No. 5) ¶ 10. In addition, Mr. Smith asserts that he knows of "other white students who had run-ins with the law" who received clinical placements, while he did not. Id. ¶ 15. As for his retaliation claim, Mr. Smith alleges that he was "denied the same resources" as white students in retaliation for his complaints about racial insensitivity. Id. ¶ 18.

    RWULS argues that Mr. Smith's claims of disparate treatment are merely conclusory and lack sufficient factual details to set forth a plausible claim for relief. The court agrees. Mr. Smith's assertions that RWULS administers "harsher punishments to persons of color," Compl. (Doc. No. 1-1) at 6, and that it treated his complaint against two white students less seriously than a complaint against him, Compl. Add. (Doc. No. 5) at 2, lack any information about the nature and circumstances of the complaints at issue or any resulting adverse action and therefore do not give rise to a plausible inference of disparate treatment. See Doe v. Amherst Coll., 238 F. Supp. 3d 195, 224 (D. Mass. 2017) (granting judgment on the pleadings to college where plaintiff failed to allege that "other students who were found responsible for similar violations and received lesser punishments."). Nor -- given that Mr. Smith himself was

9

involved in two of the complaints noted above -- is this a situation where more details are "likely within [the defendant's] control."  See Doe v. Tr. of Dartmouth Coll., 2021 WL 2857518 at *8.

While Mr. Smith is not required to plead specific details about the putative comparator cases, he has, unlike the plaintiff in Doe v. Tr. Of Dartmouth Coll., failed to identify with any specificity a "comparator group" that "was treated differently due to their race."  In that case, the plaintiff alleged that "at least 9 Black male football players were suspended or expelled" following disciplinary proceedings, but no white football players were referred for formal investigation during that same time period."  In addition, the plaintiff alleged that "in at least one case a white student-athlete was allowed [to] delay the imposition of a [disciplinary] suspension so that he could complete his athletic season", while no Black football players were not offered the same opportunity.  Id.

Similarly, in Doe v. Harvard Univ., 462 F. Supp. 3d 51, 67 (D. Mass. 2020), the court denied the defendant's motion to dismiss because the plaintiff alleged a "comparator group – Caucasian students accused of similar sexual misconduct" and that the comparator group was treated differently.  Mr. Smith's allegations, by contrast, lack any indication as to the similarity of his conduct, e.g., "run-ins with the law," to the

10

conduct of the white students in question, or as to the disparity in punishment.  As such, he has failed to plausibly allege that race was a but-for cause of his alleged mistreatment.  And because the complaint and addendum lack any factual allegations to support a plausible inference of racial discrimination, a retaliation claim under § 1981 also fails.  See Veal v. Comm'r of Bos. Ctrs. for Youth & Fams., No. 21-CV-10265-ADB, 2022 WL 715712, at *5 (D. Mass. Mar. 10, 2022) (observing that plaintiff in section 1981 retaliation claim must allege retaliation for viable complaints of racial discrimination).  Claims 1 and 2 are therefore dismissed for failure to state a claim.

C.  Breach of Contract

Mr. Smith alleges that RWULS breached its "guarantee" that students would receive a clinical placement.  While the lack of clinical experience did not prevent Mr. Smith from graduating, he asserts that it left him less prepared for a legal career.

Under Rhode Island law, the relationship between a student and a private university is based in contract.  Doe v. Brown Univ., 943 F.3d 61, 67 (1st Cir. 2019).  To state a viable breach of contract claim, "plaintiffs must prove that a valid, binding contract existed, the defendant breached the terms of the contract, and the plaintiffs sustained damages as a result of the breach."  Brooks v. AIG SunAmerica Life Assur. Co., 480

11

F.3d 579, 586 (1st Cir. 2007). When alleging a breach, the plaintiff must "describe[e], with substantial certainty, the specific contractual promise the defendant failed to keep. Id. (quotation omitted).

Courts may rely on 'catalogs, manuals, handbooks, etc.' to assist in the determination of the terms of contract with an academic institution. Brown v. Suffolk Univ., No. CV 19-40062-DHH, 2021 WL 2785047, at *5 (D. Mass. Mar. 31, 2021) (cleaned up). RWULS, citing to the lack of any such "guarantee" in its Student Handbook (Doc. No., 57-2), claims that no such contractual promise exists. Information on the school's website, however, prevents the court from dismissing this claim. On the landing page of RWULS' website is a tab titled "Why RWU Law?" The drop-down menu from that tab includes a link titled "Guaranteed Clinical Experience." That link leads to a page titled "The Clinical Guarantee," with those words repeated in a large font at the top of the following body of text:

> RWU Law guarantees that every qualified student will
> be afforded a substantial, hands-on clinical
> experience. Just tell us where you want to go – and
> we'll help you get there. An effective, modern legal
> education requires both a strong academic grounding,
> and a robust regimen of hands-on experience.

https://law.rwu.edu/why-rwu-law/clinical-guarantee (last visited Feb. 14, 2023). Then, after four bullet-pointed paragraphs

12

detailing the attributes of the clinical program, the last entry on the page is "WE GUARANTEE IT."

In the court's view, this "clinical guarantee" language is sufficiently specific to defeat RWULS's motion to dismiss Mr. Smith's breach of contract claim. See Miranda v. Xavier Univ., 594 F. Supp. 3d 961, 970 (S.D. Ohio 2022) (denying college's motion to dismiss student's breach of contract claim premised on website's "guarantee . . .[of] placement in a quality clinical environment."); see also Ford v. Rensselaer Polytechnic. Inst., 507 F. Supp. 3d 406, 416 (N.D.N.Y. 2020) (college's motion for judgment on the pleadings denied because circular "is consistently declaratory, with several of its statements beginning with the phrase 'we will.'"); but cf. Polley v. Northwestern Univ., Case No. 20 C 4798, 2021 WL 4192076, at *8 (N.D. Ill. Sept. 15, 2021) (finding that the descriptions on the university's website "do not have any language that indicates a guarantee [of in-person instruction] has been made if prospective students accept the offer of admissions").  And while, as RWULS points out in its motion, the RWULS "guarantee" is couched in terms of "qualified students," RWULS's consideration of Mr. Smith's "qualifications" is not an issue that can be resolved on a motion to dismiss.  Similarly, Mr. Smith's assertion that his career has been hampered by lack of clinical experience is a sufficient allegation of damage to

13

withstand amotion to dismiss.  Accordingly, the court declines to dismiss Mr. Smith's breach of contract claim.

## Conclusion

For the foregoing reasons, the defendant's motion to dismiss is granted as to plaintiff's racial discrimination claims (Claims 1 and 2) and denied as to his breach of contract claim (Claim 3). (Doc. No. 57).

SO ORDERED.

/s/ Paul J. Barbadoro
Paul J. Barbadoro
United States District Judge

February 16, 2023

cc:  Jimmy Smith, pro se
     Counsel of Record

14